IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **FRANK ALEXANDER**, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. **05-708-JPG** |
| | ) | |
| **DON HULICK**[1], | ) | |
| | ) | |
| Respondent. | ) | |

# REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

Petitioner Frank Alexander is currently in the custody of the Illinois Department of Corrections, housed at Menard Correctional Center, where respondent Don Hulick is the warden. Alexander has filed a pro se petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction. **(Doc. 1).** I

In December 1998, Alexander was charged by indictment with robbery and first degree murder. **(Doc. 6-7, p. 1).** It was alleged that petitioner Alexander and three other individuals combined to commit robbery and Eric Griffin was killed by one of the parties during the commission of the robbery. **(*See* Doc. 6-7, pp. 1-62 Doc. 6-4, pp. 17-19; and Doc. 6-7, Rule 23 Order,** *People v. Alexander***, 866 N.E.2d 720 (Ill. App. 5th Dist. 2003)).** On January 30, 2002, petitioner Alexander was convicted by a St. Clair County, Illinois, jury of first degree murder, based on the "accountability theory," and he was sentenced to 40 years imprisonment. **(*See* Doc.**

---

[1]The named-respondent is Alan Uchtman, Warden, Menard Correctional Center. In accordance with Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts and *Bridges v. Chambers*, 425 F.3d 1048, 1049-1050 (7th Cir. 2005), the Court sua sponte substitutes Don Hulick as respondent. Hulick has replaced Uchtman as warden.

1

**6-4, pp. 12 and 17-19).**

Petitioner Alexander argues:

1. He was not proven guilty (as a matter of fact and law) beyond a reasonable doubt of felony murder, as charged in the indictment;

2. The State impermissibly amended and/or broadened the indictment in its closing argument and through the use of unconstitutional jury instructions; and

3. He received ineffective assistance of counsel at trial because counsel:

   a. failed to object to the aforementioned impermissible amendment of the indictment; and

   b. stipulated to evidence that was not true.

**(Doc. 1, pp. 9-11).**

Respondent counters:

1. Consideration of petitioner's argument that the State impermissibly amended the indictment is procedurally barred because the State courts disposed of that issue based on an independent and adequate state law ground;

2. Consideration of petitioner's argument that he was afforded ineffective assistance of counsel, with respect to the alleged failure to object to amendment of the indictment, is procedurally barred because that argument was never presented in state court;

3. Cause and prejudice for the aforementioned alleged two procedural defaults has not been established;

4. Petitioner has failed to argue and show that the state court's decision regarding his guilt being proven beyond a reasonable doubt was a contrary or unreasonable application of federal law, or an unreasonable determination of the facts; and

5. Petitioner has failed to show that the state court's decision that he was not denied effective assistance of counsel was a contrary or unreasonable application of federal law, or based upon an unreasonable determination of the facts.

**(Doc. 6).**

In reply, petitioner Alexander requests that the Court rely on his version of the facts, "to

2

fill in information not provided in the exhibits." **(Doc. 11, p. 1).** In addition, petitioner contends:

1. Cause and prejudice for any procedural default(s) is established because the State "waiver" rule is not firmly established and regularly followed, and it was misapplied in this situation, and he is actually innocent of the crime of conviction;

2. The theory of accountability under which petitioner was convicted is a separate and independent criminal offense, distinct from the first degree murder charge in the indictment, and should have been charged in the indictment and proven by the State; and

3. The appellate court's holding that petitioner was proven guilty beyond a reasonable doubt was contrary to, and an unreasonable application of Supreme Court precedent, in that petitioner was convicted of a charge not in the indictment (as argued above).

**(Doc. 11).**

### The Standard of Review

> Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1), habeas relief may be granted if the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" In *Williams v. Taylor*, 529 U.S. 362, 405, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Court explained that a state court decision is "contrary to" Supreme Court precedent if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. An unreasonable application of Supreme Court precedent occurs when "the state court unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle ... to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." To be unreasonable, the decision of the state court must not be simply incorrect or erroneous, it must have been "objectively unreasonable." *Wiggins v. Smith*, --- U.S. ----, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

***Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003).**

**Procedural Prerequisites**

As a preliminary matter, it must be understood that petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. ***Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995).**

**A. Exhaustion**

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." ***O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).** "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.*; *see also* **28 U.S.C. § 2254(c).** In *O'Sullivan v. Boerckel* the Supreme Court of the United States specifically addressed exhaustion under Illinois' two-tiered appellate process, holding that issues must be raised not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review (except under a limited number of special circumstances, which are not applicable to this case). ***O'Sullivan*, 526 U.S. at 843-846.**

Respondent concedes the timeliness of the petition, and that petitioner has exhausted all available avenues of relief through the State system, in that he is time barred from further pursuing the alleged constitutional errors in a state post-conviction proceedings. **(Doc. 6, p. 5;** *see also* **725 ILCS 5/122-1(c)).** Thus, petitioner has cleared the first procedural hurdle, exhaustion.

**B. Procedural Default**

> "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." ***O'Sullivan,* 526 U.S. at 842.** More to the point, the "fair presentment" doctrine requires that a petitioner give state courts a meaningful

opportunity to pass upon the substance of the claims later pressed in federal court. ***Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999).** For a constitutional claim to be fairly presented to a state court, both the operative facts and the "controlling legal principles" must be submitted. ***Picard v. Connor*, 404 U.S. 270, 277 (1971).** "At bottom, the task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis."

***Verdin v. O'Leary*, 972 F.2d 1467, 1476 (7th Cir. 1992).**

There is a second way a claim may be procedurally defaulted– "[i]n general, federal courts 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" ***Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997) (*citing Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).** In the habeas context, this doctrine applies to bar consideration of any of a petitioner's federal claims which a state court declined to address because the petitioner failed to meet a state procedural requirement. ***See Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000).** To be an adequate ground of decision, the state's procedural rule must be both "firmly established and regularly followed." ***Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984); *see also Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000).** In order for this doctrine to apply, the last state court rendering judgment must rest its judgment on procedural default and make a plain statement that it was relying either alone, or in the alternative, on the state procedural bar. ***Harris v. Reed*, 489 U.S. 255, 265 (1989).** However, no procedural default occurs if the state court's alternative finding constitutes a finding on the merits. ***Robertson v. Hanks*, 140 F.3d 707, 709 (7th Cir. 1998).**

Although no procedural default occurs if the state court's alternative finding constitutes a

finding on the merits (*Robertson v. Hanks*, 140 F.3d 707, 709 (7th Cir. 1998)), the fact that a state court addresses the merits of a petitioner's federal claim in an alternative holding does not automatically eliminate the procedural bar. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding"); *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir.1998) ("in order to foreclose review on habeas, the state court must actually state in plain language that it is basing its decision on the state procedural default and that other grounds are reached only in the alternative").

A petitioner can circumvent this bar to review if he is able to demonstrate cause for the procedural error and establish prejudice resulting from that error. *Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999); and *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The cause must be an external factor. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Absent a specific showing of cause and prejudice, "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman*, 501 U.S. at 748. This exception requires a colorable claim of actual innocence as well as an allegation of a constitutional wrong. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (miscarriage of justice exception applies to "actual" innocence as compared to "legal" innocence). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Dellinger v. Bowen,* 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Respondent argues that petitioner's procedural defaults bar consideration of his

arguments that: (1) the State impermissibly amended the indictment; and (2) he was denied effective assistance of counsel, with respect to the alleged failure to object to amendment of the indictment. Petitioner does not dispute that in the trial court he failed to lodge an objection to, and preserve the issue regarding the alleged improper amendment of the indictment, thereby waiving that error in accordance with 725 ILCS 5/116-1 and *People v. Enoch*, 522 N.E.2d 1124, 1129-1130 (Ill. 1988). **(*See* Doc. 6-7, pp. 9-11 (Rule 23 Order, *People v. Alexander*, 866 N.E.2d 720 (Ill. App. 5th Dist. 2003)).** Nor does petitioner dispute that he has never specifically presented the State courts with his argument that he was denied effective assistance of counsel, with respect to the alleged failure to object to amendment of the indictment, although he did raise the general argument that trial counsel was ineffective with respect to evidentiary stipulations **(*see* Doc. 6-3, p. 2 and Doc. 6-8).** Thus, the aforementioned procedural defaults are essentially conceded. However, petitioner attempts to show cause and prejudice for his default(s) by contending the State "waiver" rule is not firmly established and regularly followed, and it was misapplied in this situation.

Petitioner's waiver argument does not seem applicable to his failure to *ever* present his ineffective assistance of counsel argument in the State courts. Therefore, petitioner has failed to show cause and prejudice for his procedural default of that specific argument.

With respect to the argument that the State impermissibly amended the indictment, the appellate court noted that petitioner had admitted that he failed to adequately preserve the issue for appellate review, instead arguing the trial court had committed plain error. **(Doc. 6-7, p. 10 (Rule 23 Order, *People v. Alexander*, 866 N.E.2d 720 (Ill. App. 5th Dist. 2003)).** The State appellate court did not find plain error and, "[w]aiver aside," went on to address the merits of the

7

argument about the alleged improper amendment of the indictment. Relying on *People v. Pollock*, 780 N.E.2d 669, 681 (Ill. 2002), and *People v. Ceja*, 789 N.E.2d 1228, 1247 (Ill. 2003), the appellate court concluded that there was *no* legal error in charging petitioner with felony murder and convicting him under the accountability theory (as presented in closing argument and in the jury instructions). **(Doc. 6-7, pp. 10-11 (Rule 23 Order, *People v. Alexander*, 866 N.E.2d 720 (Ill. App. 5th Dist. 2003)).** In conclusion the appellate court stated:

"There was thus no impermissible amendment of the indictment, and the defendant's argument *would* fail *even if* he had preserved the issue for appeal through timely objection and a written post[-]trial motion." **(Doc. 6-7, p. 11 (Rule 23 Order, *People v. Alexander*, 866 N.E.2d 720 (Ill. App. 5th Dist. 2003) (emphasis added)).**

The use of "would" and "even if" clearly reflect that the appellate court's analysis of the merits of the argument was secondary to the conclusion regarding waiver, which still precludes review by this Court. ***See Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding"); *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir.1998) ("in order to foreclose review on habeas, the state court must actually state in plain language that it is basing its decision on the state procedural default and that other grounds are reached only in the alternative").**

In *Miranda v. Leibach*, 394 F.3d 984, 991-996(7th Cir. 2005), the Court of Appeals for the Seventh Circuit ruled that the Illinois waiver rule and the principles of *People v. Enoch*, despite varying and inconsistent application in the State courts, is "solidly established." "The ongoing inconsistency might be explained by the principle, often recognized in Illinois cases, that waiver binds the parties but not the courts." ***Id.* at 994.** It was explained that to fail the

8

adequacy test, a rule must be invoked "'infrequently, unexpectedly, or freakishly.'" ***Id.* at 995 (quoting *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990)).*** Petitioner has not presented any additional arguments sufficient to cause this Court to diverge from the holding in *Miranda v. Leibach*; therefore, he has failed to show cause and prejudice for his procedural default.

Petitioner's claim of actual innocence is premised upon his argument that he was not proven guilty beyond a reasonable doubt; that argument fails for reasons set forth below. Put succinctly, there is no legal error in the indictment upon which conviction is based, and there is clear and convincing evidence that would support a reasonable juror finding petitioner guilty beyond a reasonable doubt. Petitioner offers no contrary evidence.

In summary, petitioner's procedural defaults bar consideration of his arguments that: (1) the State impermissibly amended the indictment; and (2) he was denied effective assistance of counsel, with respect to the alleged failure to object to amendment of the indictment.

## Analysis of the Merits of the Remaining Arguments

Petitioner Alexander would have the Court rely on his version of the facts, "to fill in information not provided in the exhibits." However, Alexander does not present clear and convincing evidence challenging the statement of facts as set forth in the Illinois Appellate Court's opinion affirming the judgment of the Circuit Court of St. Clair County, and thus the Court presumes those facts are correct for purposes of its habeas review. ***See* 28 U.S.C. § 2254(e)(1);** *see also* ***Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007).** Therefore, this Court adopts the underlying facts as set forth by the Illinois Appellate Court, Fifth Judicial District **(Doc. 6-7, pp. 1-6 (Rule 23 Order, *People v. Alexander*, 866 N.E.2d 720 (Ill. App. 5th Dist.**

9

2003)).

### A. Guilt Beyond a Reasonable Doubt

Petitioner Alexander argues that he was not proven guilty (as a matter of fact and law) beyond a reasonable doubt of felony murder, as charged in the indictment. Petitioner actually argues that he was not found guilty beyond a reasonable doubt of the predicate offense of robbery, or of murder under the accountability theory. Petitioner argues that he would have to be found to be a principal in the robbery in order to be held accountable of murder under the accountability theory, which would then impermissibly obviate any finding regarding his intent or mental state. Because of the aforementioned fair presentment doctrine, this Court can only analyze the arguments presented to the State appellate court:

1. The evidence failed to establish beyond a reasonable doubt that defendant was accountable for the acts of another; and

2. The State failed in its burden of proof to prove beyond a reasonable doubt that the victim died as a result of being beat with an iron or television as charged in the indictment, which has an element of the offense. [sic]

**(Doc. 6-3, p. 6).** More specifically, petitioner asserted that the State failed to prove petitioner had the requisite intent to aid or abet David Dunn in committing first degree murder. **(Doc. 6-3, p. 21).** Petitioner also argued that the State failed to prove that he knew of David Dunn's intent to kill Eric Griffin, petitioner had no knowledge of the manner of Griffin's death, and there was no evidence that any of the perpetrators had knowledge of an iron or television being used to strike the decedent. **(Doc. 6-3. P. 24).** Petitioner essentially contends he was merely present at the scene, although admittedly involved in the robbery. **(Doc. 6-3, p. 16).**

The State appellate court, applying the standard for proof beyond a reasonable doubt set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), found that:

the evidence was more than ample to prove that the defendant masterminded the robbery scheme, recruited others, for whose actions he was accountable, to participate in the crime, was present at the crime scene with a weapon, was more likely than not present when the fatal blows were struck, removed the proceeds of the robbery from the crime scene, concealed them, moved them to another location where he was present when they were discovered by the authorities, and made a voluntary statement implicating himself in the crime after being properly advised of his rights.

**(Doc. 6-7, pp. 7-8).**

With respect to the argument regarding whether the victim was killed with an iron or a televison, and whether that matters, the appellate court framed the issue as whether there was a fatal variance between the indictment and the proof, which is analyzed as a challenge to the sufficiency of the evidence. **(Doc. 6-7, p. 8).** The appellate court relied upon *People v. Meras*, 671 N.E.2d 746 (Ill. App. 1st Dist. 1996), noting the following, which essentially resolves petitioner's argument:

> The State is not required to plead evidentiary details. Where an indictment charges all of the essential elements of the offense under a statute, other matters unnecessarily added may be rejected as surplusage. Immaterial matters or matters that may be omitted from an indictment without rendering it insufficient or doing damage to the material averments are surplusage.
>
> The means by which the killing was accomplished was not an element of first-degree murder because the gravamen of the offense is the unlawful killing of another. Therefore, the phrase, "with a blunt object" could have been omitted from the indictment without doing damage to the material averments, making it surplusage.

*Meras*, **671 N.E.2d at 751-752 (internal citations omitted);** *see* **Doc. 6-7, p. 8).** Although the appellate court thought the jury could have concluded from the evidence that the victim was killed by an iron and/or a television, the court noted that petitioner had not argued that his defense would have varied if that descriptive language had been omitted from the indictment. **(Doc. 6-7, p. 9).** Moreover, a bloody steam iron and a bloody television were found at the crime

11

scene; a pathologist testified the victim died from cranial cerebral blunt trauma; the pathologist concluded one of the deep blows was consistent with a blow from an iron, not a pistol whipping, which was an additional possibility. **(Doc. 6-7, pp. 5-6).**

After finding that petitioner had waived his argument regarding the alleged impermissible amendment of the indictment, the State appellate court further analyzed the evidence of accountability– including plaintiff's admission and corroborating evidence that petitioner formulated the plan for the robbery, was present at the scene, did not disassociate himself with his partners in the robbery, and concealed his part in the crime. **(Doc. 6-7, p. 12).** Citing *People v. McCoy*, 786 N.E.2d 1052 (Ill. 2003), regarding application of the "common-design rule" of accountability (720 ILCS 5/5-2), the appellate court concluded the evidence supported the jury's finding of guilt beyond a reasonable doubt. *Id.* Again, petitioner offers no contradictory evidence.

"The federal habeas scheme . . . authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford v. Visciotti*, **537 U.S. 19, 27 (2002).** "Errors of state law in and of themselves are not cognizable on habeas review. The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley,* **390 F.3d 505, 511-12 (7th Cir. 2004) (internal citations omitted).** "Within this framework, the precise legal question that we must answer is . . . : 'Was it objectively unreasonable for the Illinois Appellate Court to conclude that any rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found the essential elements of [the offense].'" *McFowler v. Jaimet*, **349 F.3d 436, 447 (7th Cir.**

12

**2003).**

In addition, insofar as petitioner contends the State did not prove his guilt beyond a reasonable doubt, he obliquely asserts that his federal constitutional right to due process was violated. In accordance with *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), due process is satisfied if, when the evidence is viewed in the light most favorable to the prosecution, *"any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."* *Id.* (emphasis in the original). Courts defer to a fact finder's credibility determinations and will overturn verdicts only if "the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." **United States v. Cummings, 395 F.3d 392, 397 (7th Cir. 2005) (citation omitted).** In addition, "[d]ue process requires that the elements of a crime be proved but does not prescribe the elements." **Fagan v. Washington, 942 F.2d 1155, 1158 (7th Cir. 1991).**

*People v. Meras*, 671 N.E.2d 746 (Ill. App. 1st Dist. 1996), cited by the State appellate court, makes clear that petitioner's argument about the mention of an iron and television in the indictment and an alleged lack of proof is a red herring. Moreover, this Court agrees that there was ample evidence from which the jury could conclude one or both of those implements was used to kill the victim. The applicable law was reasonably applied and the conclusion of guilt beyond a reasonable doubt is entirely reasonable based on the evidence presented. The same can be said with respect to the application of the accountability theory an the evidence thereof.

The fact that the cause of death could not be precisely determined, being a blow by an iron or by a television, is irrelevant under this theory; petitioner's planning role in the predicate robbery, his participation and failure to disassociate himself with the plan when it went seriously

13

awry, all cinches his culpability under the accountability theory.

The "common-design rule" of accountability holds a person legally accountable for the conduct of another when: "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, agrees or attempts to aid, such other person in the planning or commission of the offense." **720 ILCS 5/5-2(c).**

> Under the common-design rule, if " 'two or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts.' " [Citation.] *People v. Williams,* 193 Ill.2d 306, 338-39, 250 Ill.Dec. 692, 739 N.E.2d 455 (2000). The word "conduct" encompasses *any* criminal act done in furtherance of the planned and intended act. *People v. Terry,* 99 Ill.2d 508, 515, 77 Ill.Dec. 442, 460 N.E.2d 746 (1984). Because the underlying intent of the accountability statute incorporates the principle of the common-design rule, even if a misdemeanor was originally intended, the defendant is deemed as guilty as the perpetrator of the ultimate felony offense. See *Terry,* 99 Ill.2d at 515, 77 Ill.Dec. 442, 460 N.E.2d 746.

***People v. McCoy*, 786 N.E.2d 1052, 1055 (Ill. App. 2nd Dist. 2003).**

The Supreme Court of Illinois has held that it is permissible to charge an accomplice with being a principal in a first degree murder, because accountability is not a separate offense; rather, it is an alternate mechanism of proof. ***People v. Ceja*, 789 N.E.2d 1228, 1247 (Ill. 2003).**

Petitioner admits being present and being a part of the robbery. The evidence clearly establishes beyond a reasonable doubt that petitioner was involved in the robbery from planning, to coverup, so he cannot now claim that he was merely present. Even if had he not been present, petitioner could not escape liability; the murder, although apparently unplanned, facilitated the robbery.

14

Although the Illinois appellate court relied on Illinois law, the Illinois court is not required to cite United States Supreme Court cases or even be aware of such law, as long as neither its reasoning nor the result of the state court decision contradicts clearly established Supreme Court precedent. *See Early v. Packer,* **537 U.S. 3, 8 (2002).** There is no such contradiction. Such accomplice liability, presented via jury instructions, has been held not to offend the federal right to due process. *See Garth v. Davis*, **470 F.3d 702 (7th Cir. 2006) (pertaining to Indiana's accountability statute).**

The People's jury instructions Nos. 9, 10 and 12, in combination, present the elements of first degree murder and explain how the accountability theory links the predicate offense and the murder. **(Doc. 6-4, pp. 17-19).** The common design and the mens rea do not have to pertain to the murder. *People v. Terry,* **99 Ill.2d 508, 514, 77 Ill.Dec. 442, 445, 460 N.E.2d 746, 749 (1984);** *People v. Taylor,* **199 Ill.App.3d 933, 940, 145 Ill.Dec. 938, 943, 557 N.E.2d 917, 922 (1990);** *People v. Watts,* **170 Ill.App.3d 815, 825, 121 Ill.Dec. 427, 434-35, 525 N.E.2d 233, 240-41 (1988);** *Brennan v. People***, 15 Ill. 511 (Ill. 1854).** Petitioner does not dipute that there was a murder.

For the aforestated reasons, any rational trier of fact could have found petitioner's guilt of first degree murder by way of the accountability theory; the state law of conviction was reasonably applied, consistent with the requirements of federal due process.

### B. Assistance of Trial Counsel

Petitioner Alexander alleges that his trial counsel, Thomas M. Daley, was ineffective, in that counsel: (1) stipulated that the broken steam iron had blood on it without insisting that the

15

iron be tested; (2) did not require about the nature of the trace evidence on the iron; and (3) did not effectively challenge the necrologist's testimony that the nature of the victim's head and facial wounds was consistent with blunt force from an iron. **(Doc. 6-4, pp. 4-8; and Doc. 6-7, p. 13).** Petitioner contends that the stipulation about the iron was antithetical to the defense's position that a gun, not an iron or television as charged in the indictment, could have been the murder weapon. **(Doc. 6-4, p. 5).**

The State appellate court noted that the stipulation did not pertain to an essential element of the charge, and found that it was a reasonable exercise of professional judgment to stipulate, since it was cumulative of evidence that a bloody steam iron had been found next to the victim's battered body. **(Doc. 6-7, p. 14).** Accordingly, the appellate court further reasoned that any further inquiry by counsel into the forensic testing of the red substance on the iron would not have added to the defense. **(Doc. 6-7, p. 14).** Similarly, the appellate court concluded challenging the testimony that one of the blows to the victim's head was consistent with a blow from an iron was not ineffective. **(Doc. 6-7, pp. 14-15).**

A petitioner bears a "heavy burden in proving that [his or her] trial attorney rendered ineffective assistance of counsel." ***U.S. v. Holland*, 992 F.2d 687, 691 (7th Cir. 1993).** For a conviction to be reversed for ineffective assistance of counsel, a two-prong test must be met: (1) the trial counsel's representation must fall below an objective standard of reasonableness, and (2) counsel's deficient performance must have prejudiced the defense. ***Strickland v. Washington*, 466 U.S. 668, 687 (1984).** The first prong of the *Strickland* test requires a showing that counsel made errors so serious that counsel was not functioning as guaranteed the [petitioner] by the Sixth Amendment of the United States Constitution. ***Strickland*, 466 U.S. at**

16

687. The second prong of the *Strickland* test requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial. *Id.* Reasonable, informed strategic decisions are virtually unchallengeable under *Strickland*. **U.S. ex rel. Hampton v. Leibach, 347 F.3d 219, 247 (7th Cir. 2003).**

As discussed above, the appellate court relied upon *People v. Meras*, 671 N.E.2d 746 (Ill. App. 1st Dist. 1996), which states in pertinent part:

> The State is not required to plead evidentiary details. Where an indictment charges all of the essential elements of the offense under a statute, other matters unnecessarily added may be rejected as surplusage. Immaterial matters or matters that may be omitted from an indictment without rendering it insufficient or doing damage to the material averments are surplusage.
>
> The means by which the killing was accomplished was not an element of first-degree murder because the gravamen of the offense is the unlawful killing of another. Therefore, the phrase, "with a blunt object" could have been omitted from the indictment without doing damage to the material averments, making it surplusage.

***Meras*, 671 N.E.2d at 751-752 (internal citations omitted);** *see* **Doc. 6-7, p. 8).** Thus, it is not material to guilt whether the iron caused the fatal blow and whether it had the victim's blood on it, and regardless of any trace evidence. Similarly, any attempt to argue that the victim was killed by blows from a gun, not from an iron or television, is a nonstarter.

The decision of the state appellate court is not contrary to, nor an unreasonable application of, clearly established federal law.

This Court also observes that, although petitioner cites *Strickland*, he has not specifically detailed how the *Strickland* test was improperly or unreasonably applied by the appellate court. Therefore, pursuant to 28 U.S.C. § 2254(d)(1) and *Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003), habeas relief cannot be granted. The appellate court properly cited the *Strickland* test and reviewed the trial transcript within that framework.

17

**Recommendation**

For the aforestated reasons, it is the recommendation fo this Court that petitioner Frank Alexander's petition for writ of habeas corpus **(Doc. 1)** be denied in all respects, thereby leaving his conviction and sentence undisturbed.

**DATED: July 11, 2008**

s/ Clifford J. Proud
**CLIFFORD J. PROUD
U. S. MAGISTRATE JUDGE**

**Notice of Response Deadline**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **July 28, 2008**.